MONROE, C. J.
As stated in the opinion heretofore handed down,[1] plaintiff appeals from a judgment rejecting his demand for the payment by defendant of certain amounts required for state and parish licenses for the business of peddling and hawking; the periods covered by the demand being the years beginning March 1, 1916 and 1918, respectively, and there being also a demand for interest and attorney’s fees and for a writ of injunction restraining defendant from continuing the business in question without obtaining licenses.
The facts are admitted that, during the years mentioned, defendant made regular trips, not less than four times a year, through the parish of Tangipahoa, and, perhaps, into other parishes, in a two-horse wagon, owned and driven by him and loaded with patent medicines and other merchandise obtained from the J. R. Watkins Medical Company, of Winona, Minn., and that he sold the merchandise, so peddled, from door to door, by contracts then entered into between him and the buyers, and either received the cash therefor, or extended credit, as he thought proper; the inference that we draw from his testimony being that he was responsible to the Watkins Company for the merchandise, which was shipped to him, and not to his buyers, and that he had a privilege of some kind with regard to the return of merchandise which he was unable to sell, or, when he could recover it, in kind, in cases, where, having sold it, he found himself unable to collect the price, his testimony upon that point not being as clear as it might have been. The same lack of clarity, as to the exact relations between the Watkins Company and those who, like defendant, peddle the goods put up by it, is manifested in the advertising literature which has been offered on behalf of defendant, and which, while bearing the name of the Watkins Company, most conspicuously, contains no positive information on that subject. Thus, upon the front of a 16-page, profusely illustrated brochure, there appear what purport to be pictures of J. R. Watkins, and of a “Happy Family,” who “like” thd “Watkins way” and “The Welcome Visitor,”, with the legend, in large type, “A Personal Letter to Our Friends and Friends to be,” which letter, in smaller type, reads in part:
“Dear Friend: I shall have the pleasure of calling at your home some time during the next ten days and will have with me a complete sample line of the J. R. Watkins Medical Company’s home remedies. My wagon will be filled with a good supply of all these valuable products, so that I can make immediate delivery to you of anything in the line that you may desire. * * * This magazine is sent to you as an expression of appreciation, coming from both my firm and myself, for your courteous treatment of me * * * and * * * valuable orders which you may have given me.”
(A paragraph referring to the superior merits of everything that bears the name of J. R. Watkins on the label.)
“I take great pleasure in being able to supply my friends and customers with these things. * * * If you have never purchased any of these things from me, I hope you will do so when I call on you the next time. * * * If you are in need of anything in my line, it will pay you to hold your orders until I can call and show you the excellent values I have to offer you.” (Italics by present writer.)
All that appears by way of signature are the printed words, “The Watkins Man.”
Defendant testifies that he sends such papers to his customers, in advance, in order that they may check thereon the goods that they want, and order them when he next appears, upon which orders, to him, he orders the goods from the Watkins Company, delivers them on the next trip, collects the price, and forwards it to the Watkins, less his “commission,” which is one-half of what *639 he receives. If, however, he has in his wagon the goods that a customer wants, he simply delivers them and collects the money, or, if he gives credit, our inference is that he does it on his own responsibility and must account for the price to the Watkins Company, whether he collects it or not. It is not pretended that the Watkins Company pays any license to do business in this state, and it cannot be denied that all the business that is done between defendant and his customers is done in this state and consists of the sale and delivery of articles which defendant has in his wagon when he sells them, or gets by request and subsequently delivers to his customers, who pay him for them and have no dealings whatever with the Watkins Company.
In State v. Generelly, 35 La. Ann. 75, it appeared that defendant was employed by a firm domiciled in New Orleans, which paid a license for its business and paid him a salary to travel and sell their goods as part of that business. In Ballard v. Kimberlin, 137 La. 16, 68 South. 197, defendant was sued, under Act No. 295 of 1908, for a license for peddling the goods, as the clerk, of the Standard Oil Company and it was held that the statute requiring a license from a clerk was in contravention of article 229 of the Constitution, which exempts clerks, laborers, clergymen, etc., from the payment of licenses; and, further, that defendant never drove his wagon from house to house offering oil to the general public, and that the Standard Oil Company had paid licenses for the business done by it through defendant and others. In the instant case, our further consideration of the undisputed facts and of the testimony of defendant leads to the conclusion that the only business done in this state by the Watkins Company is the interstate commerce consisting of the shipment of goods to defendant upon certain terms, agreed on as to the payment by him of the price or value, which business establishes no relation of seller and buyer as between that company and defendant’s customers ; hence, the company owes no license here and pays none.
The business of defendant, on the other hand, consists of obtaining the goods from the Watkins Company upon the terms agreed on between them, and selling them, not for the account of that company, but for his own account, and paying the Watkins Company for them, by dividing the proceeds of the sale between the company and himself.
If, however, it were a fact that he sells and delivers the goods from his wagon, as the agent of the Watkins Company he would nevertheless be liable for the license, since it is well settled that such license would not be a tax upon interstate commerce within the meaning of the Constitution of the United States (Emert v. Missouri, 156 U. S. 296, 15 Sup. Ct. 367, 39 L. Ed. 430), and the exemption of clerks, as contained in the Constitution of this state, could not be extended to cover the case of a merchant in another state, doing business in this state through an agent,' and neither he nor the agent paying a license therefor.
It is therefore ordered that the decree heretofore handed down, herein be set aside, and it is now adjudged and decreed that there be judgment for plaintiffs, the state of Louisiana and parish of Tangipahoa (and against the defendant, John E. Russell), each, for the sum of $200, with interest at the rate of 2 per cent, per month upon $100 of the amount thus awarded to each of said plaintiffs, from March 1, 1916, and upon $100, so awarded, from March 1, 1918, until paid, and 10 per cent, as attorney’s fees upon the aggregate hmount due to each of said plaintiffs ; and it is further ordered and decreed that defendant be enjoined and restrained from further carrying on the business of peddling and hawking patent medicines or *641 other merchandise in the parish of Tangipahoa, or in this state, until he shall have obtained parish and state licenses authorizing him so to do. It is further ordered that defendant pay all the costs of this proceeding.

 Original opinion not published by order of court.